IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

SUSAN B. MAY,

    Plaintiff,

v.                                                               CIVIL ACTION NO. 3:06-0649

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

## **MEMORANDUM ORDER**

In this action, filed under the provisions of 42 U.S.C. § 405(g), plaintiff seeks review of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits. The case is presently pending before the Court on cross-motions of the parties for judgment on the pleadings.

Plaintiff filed her application on May 7, 2004, alleging disability commencing March 31, 2004, as a consequence of depression and anxiety, a cardiac condition, high blood pressure, high cholesterol and hypothyroidism. On appeal from an initial and reconsidered denial, an administrative law judge, after hearing, found plaintiff not disabled in a decision which became the final decision of the Commissioner when the Appeals Council denied a request for review. Thereafter, plaintiff filed this action seeking review of the Commissioner's decision.

At the time of the administrative decision, plaintiff was forty-five years of age and had obtained a high school education and two years of college. Her past relevant employment experience consisted of work as an office manager. In her decision, the administrative law judge found that plaintiff suffered from "hypertension, coronary artery disease, gastroesophageal reflux disease

(GERD), knee pain, obesity, depression, anxiety, and obsessive-compulsive disorder," impairments which she considered severe. Though concluding that plaintiff was unable to perform her past relevant work,[1] the administrative law judge determined she had the residual functional capacity for a limited range of sedentary level work. On the basis of this finding, and relying on Rule 201.21 of the medical-vocational guidelines[2] and the testimony of a vocational expert, she found plaintiff not disabled.

From a review of the record, it is apparent that the evidence, though conflicting, provides substantial support for the Commissioner's decision. The record reflects that plaintiff's hypertension, hypothyroidism and gastroesophogal reflux disease are stable with medication. Her cardiac condition has also been stable since surgery for placement of a stent in August 2003.

On March 31, 2004, plaintiff reported to her cardiologist that while she was visiting in Florida she had experienced sweating, shortness of breath and weakness with frequent walking and was concerned these were related to her heart. A repeat stress test was interpreted as normal, however, and subsequent follow-up appointments have been unremarkable. Though plaintiff reported to the Commissioner's consultative evaluator, Dr. Nutter, she had some intermittent knee pain, she has not been treated for this, and exam revealed nothing abnormal except some crepitus[3] and some pain with squatting.

---

[1] This finding had the effect of shifting a burden of production to the Commissioner with respect to other work plaintiff was capable of performing. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

[2] 20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 1.

[3] Crepitus is a crackling sound produced in a joint where there is arthritis. Attorney's Dictionary of Medicine, C-493 (2007).

The state agency medical advisors assessed plaintiff as capable of light level work requiring only occasional climbing, balancing, stooping, kneeling, crouching or crawling. Dawn MacFarland, M.D., who treated plaintiff's aliments beginning August 12, 2004, assessed her residual functional capacity on February 8, 2006, finding she could lift/carry consistent with light level work but could stand and walk less than two hours per work day, needed to alternate sitting and standing, could never climb ladders, ropes or scaffolds or crawl, and should only occasionally stoop, kneel and crouch. Dr. MacFarland attributed all of these limitations to plaintiff's obesity.

The administrative law judge's findings as to physical residual functional capacity are actually more limited than Dr. MacFarland's in most respects, as she determined plaintiff could perform work at only the sedentary exertional level and should be allowed a sit/stand option at "brief" intervals. She further found plaintiff could no more than occasionally climb, crawl, balance, stoop, kneel or crawl and needed to work in as clean an environment as possible. The administrative law judge specifically noted that obesity, knee pain and a cardiac condition were the impairments resulting in these limitations.

Despite plaintiff's protestations that her file "contains more than an abundance of objective medical documentation which clearly supports the claims of chronic pain resulting in [her] inability to work," the administrative law judge's findings to the contrary are clearly supported by substantial evidence in the record as well as plaintiff's own report as to her physical abilities to perform her daily activities. In making her findings, it is apparent that the administrative law judge considered plaintiff's physical impairments in combination and that there was no further evidence to be developed regarding those impairments, and there was no suggestion by plaintiff of any additional evidence which would provide any further support for her allegations as to her physical restrictions.

The evidence as to mental impairments is conflicting. Plaintiff alleged she decided to quit working on March 31, 2004 for a number or reasons but asserted it was mainly due to an inability to mentally perform her job tasks. The record reflects that on that date she was seen for two appointments - one with Dr. Janet Wallace, her primary care physician at that time, where she reported she was experiencing fewer panic attacks but was still feeling down a lot. The other appointment, as noted above, was with a nurse at her cardiologist's office to whom she reported visiting Florida earlier in March and experiencing some troubling physical symptoms, but she was also planning another trip soon.

Plaintiff testified she had experienced difficulty with anxiety and depression for "lots of years" and has periodically been through counseling and on medication. The most recent counseling began on October 21, 2003 when she referred herself to Shawn Cade, M.A. complaining of anxiety and depression related to "familial disturbance." The diagnosis was generalized anxiety disorder and major depressive disorder, single episode, moderate. He rated plaintiff's Global Assessment of Functioning ("GAF") at sixty-five, consistent with "some mild symptoms" or "some" difficulty in social, occupational or school functioning "but generally functioning pretty well, has some meaningful interpersonal relationships."[4] Her highest GAF in the preceding year was eighty, consistent with symptoms described as "transient and expectable reactions to psychosocial stressors" and causing "no more than slight" impairment in social, occupational or school functioning.[5] Mr. Cade indicated in a June 8, 2004 update that plaintiff was "currently" unemployed related to the anxiety and difficulty separating her responsibility for others. He explained she felt an

---

[4] See, Diagnostic and Statistical Manual of Mental Disorders, 4th Ed., American Psychiatric Association, 1994 at 32.

[5] Id.

"inappropriate" level of responsibility for taking care of family and others in her life, and this responsibility caused increased anxiety "when life situations arise that may cause conflicts." There was no mention of plaintiff having symptoms of obsessive-compulsive disorder ("OCD"), which she testified were so debilitating that she could not concentrate to complete tasks at work.

A report of consultative psychological evaluation performed by Penny Perdue, M.A., also in June 2004, says nothing about obsessive-compulsive symptoms either, and this was apparently not one of plaintiff's complaints to this examiner. Ms. Perdue's findings were remarkable only for moderately deficient recent memory and a "well above average" level of concentration.

Plaintiff sought psychiatric treatment from Dr. Timothy Thistlethwaite on November 2, 2004 complaining of anxiety, depression and "minimal" symptoms of obsessive-compulsive disorder, which she had "always had." She indicated the OCD symptoms had worsened since June 2004 to the point they were "controlling her life." She also related having a germ phobia, which she mentioned at the hearing. Though feeling anxious daily, plaintiff admitted her last panic attack was three months earlier. Exam revealed she was alert and oriented with a broad affect and anxious mood. This examiner's impression was dysthymia and OCD. He rated plaintiff's current GAF at seventy, in the mild symptom range,[6] and had her try Cymbalta.[7] By February 1, 2005, plaintiff was reporting her OCD was "well controlled," and anxiety and depression symptoms were mild, and by March 7, she reported having no symptoms of depression, and anxiety was well-controlled.

In June 2005, plaintiff reported an increase in OCD symptoms once monthly, felt by this physician to be related to PMS. Problems with insurance coverage for Cymbalta, and changes in

---

[6]See, Diagnostic and Statistical Manual of Mental Disorders, supra, at 32.

[7]This medication is indicated for the treatment of major depressive disorder and generalized anxiety disorder. Physician's Desk Reference, 63rd Ed., Physician's Desk Reference, Incorporated, 2009 at 1802.

medication used to help plaintiff sleep appeared to be at least partially responsible for a significant increase in anxiety and obsessive symptoms, according to plaintiff's report on July 18, 2005. She subsequently switched psychiatrists, beginning treatment with Dr. Debra Stultz on October 5, 2005 when she received a diagnosis of OCD, generalized anxiety disorder and major depressive episode. Plaintiff reported she was feeling better in four weeks with the prescription of new medication, and in December 2005 her sleep, memory, concentration, motivation and interests were improved, although she did express some concern about a "germ phobia" and excessive worry that she might hurt someone's feelings.

     Dr. Stultz completed an assessment of plaintiff's mental functioning on February 8, 2006, wherein she found plaintiff markedly limited in five areas of mental functioning and moderately limited in four other areas. By way of explanation for the assessment, Dr. Stultz relates plaintiff's reported symptoms as to her difficulty with germs, even though this was barely mentioned in her reports.

     Following the hearing, the administrative law judge sought to obtain treatment notes from Mr. Cade, plaintiff's counselor, even issuing a subpoena for such records. They were not provided, however. Instead Mr. Cade submitted a "treatment summary" in which he related plaintiff's history and noted that she was not working due to the same problems he reported in the June 2004 summary. Though he notes OCD as a diagnosis, there is no mention of it in his report. He lists plaintiff's current GAF as fifty, at the borderline between "serious" symptoms/impairment in functioning and moderate symptoms or functional impairment.[8] Plaintiff's highest GAF during the past year was seventy, which, as noted, is indicative of mild symptoms or mild functional impairment. It was Mr. Cade's opinion that plaintiff may be able to recall simple or complex procedures, but anxiety

---

[8] Id.

"cripples her to a point where she is unable to complete the task." He offered no explanation for why plaintiff's functioning had decreased from his previous report.

In considering this evidence and resolving the conflicts therein, the administrative law judge rejected Dr. Stultz's assessment as being "unsupported by any notes or assessment," an error on her part as she apparently did not realize Dr. Stultz was the author of a couple reports which the administrative law judge attributed to Dr. MacFarland. She also gave little weight to the counselor's opinion because he failed to submit any supporting reports. It was the administrative law judge's conclusion that plaintiff had moderate functional limitations in the areas of social functioning and concentration, persistence and pace, and her ability to perform complex or detailed tasks was "moderately" decreased, although she could perform simple tasks requiring little interaction with the public.

Plaintiff argues that the administrative law judge erroneously "discredited" the opinions from Dr. Stultz and Mr. Cade in favor of the residual functional capacity assessments of the state agency medical advisors. First, it is apparent the administrative law judge did not adopt the residual functional capacity assessments of the non-examining state agency physicians, as her own residual functional capacity findings are much more limited. Second, while she did give little weight to the opinions of Dr. Stultz and the counselor, her findings in this regard are supported by substantial evidence. Despite the administrative law judge's mistake relative to the identity of the two progress notes from her in the record,[9] it is apparent that neither plaintiff's complaints nor the clinical findings, which are relatively brief, support the extreme limitations this physician listed in her assessment. Her explanation reads like a recitation of plaintiff's complaints, which none of the

---

[9]While plaintiff was seen in Dr. Stultz's office on October 5, October 27 and December 21, 2005, Dr. Stultz actually examined her only on the first and third visits, and a nurse practitioner saw her in between.

treating or examining sources have corroborated on exam. Dr. Stultz's notes reflect plaintiff's symptoms were improving once she was weaned off Cymbalta and had taken Luvox[10] long enough to feel a difference. Likewise, Mr. Cade's treatment summary was mostly a reiteration of his findings when he first examined plaintiff in October 2003. It is odd how different his statements as to why plaintiff was not working are from Dr. Thistlethwaite's notes, Dr. Stultz's assessment and plaintiff's own testimony. While his treatment notes may have revealed information which explains this inconsistency, his refusal to provide them left the administrative law judge no choice but to reject his conclusions that plaintiff's anxiety was so crippling she essentially could not work. The Court concludes that neither Dr. Stultz's assessment nor Mr. Cade's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and that both are "inconsistent with the other substantial evidence in [plaintiff's] case record." As such the administrative law judge determined that neither is entitled to controlling weight, a conclusion supported by the evidence and the regulations.

Resolution of conflicts in the evidence is within the province of the Commissioner, not the courts, Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964), and if the Commissioner's findings are supported by substantial evidence this Court is bound to uphold the decision. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). The evidence in this case, though clearly conflicting, does provide substantial support for the Commissioner's findings with respect to plaintiff's impairments and residual functional capacity.

As with plaintiff's physical impairments, it is clear that the administrative law judge also took into account the combination of plaintiff's mental impairments as well as the combination of all her

---

[10]This medication, an antidepressant, is indicated for the treatment of social anxiety disorder and obsessive-compulsive disorder. See, Physician's Desk Reference, supra, at 1760-61.

impairments in evaluating whether she met or equaled a listed impairment and in assessing her residual functional capacity. The administrative law judge's findings are well-supported by the evidence, and consequently, he posed to the vocational expert "proper hypothetical questions which fairly set out all of plaintiff's impairments." Walker v. Bowen, 889 F.2d 47, 50-51 (4th Cir. 1989). The Commissioner's decision must therefore be affirmed.

On the basis of the foregoing, it is **ORDERED** that plaintiff's motion for judgment on the pleadings be denied, that the like motion of defendant be granted, and the decision of the Commissioner affirmed.

The Clerk is directed to transmit a copy of this Memorandum Order to all counsel of record.

ENTER: June 9, 2009

_____
MAURICE G. TAYLOR, JR.
UNITED STATES MAGISTRATE JUDGE